312

(C.D. 3751)

F. W. MYERS & Co., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 26, 1969)

*Barnes, Richardson & Colburn* (*Earl R. Lidstrom* and *James H. Lundquist* of counsel) for the plaintiff.

*William D. Ruckelshaus,* Assistant Attorney General (*Arthur E. Schwimmer* and *Thomas A. S. Fernandes,* trial attorneys), for the defendant.

*William Browder,* general counsel for Union Tank Car Co.

Before RICHARDSON and LANDIS, Judges

RICHARDSON, Judge: The merchandise of these protests, consolidated for trial, is described on the invoice as "1 only M.T. Cylindrical Tank unfinished, ¼" [inch] or thicker on its own wheels" or "1 only empty metal container designed and used for the transport and storage of compressed gases. Mounted on U.S. trucks moved to Canada

to provide a means of transportation only." The merchandise was classified in liquidation under item 690.15 of the Tariff Schedules of the United States as "railroad and railway rolling stock: * * * other cars, not self-propelled," and assessed for duty at the rate of 18 per centum ad valorem on the value of processing done in Canada, the country of exportation. It is claimed by the plaintiff under its amended protest that the merchandise should be classified under item 640.10 of the tariff schedules as metal pressure containers designed and used for the transport and storage of compressed gases at the duty rate of 10 per centum ad valorem. Additional claims in the protests were not pursued at the trial.

The evidence in the record consists of the testimony of an officer and of an employee of Union Tank Car Company, the ultimate consignee of the imported merchandise, drawings and specifications of the involved articles, both as unfinished and as completed (exhibits 1 and 3), and photographs of such articles, in an unfinished as well as in a finished state (exhibits 2 and 4), received on behalf of the plaintiff. The defendant offered no evidence.

The essential facts as developed in the evidence are not in dispute. The involved articles are partially manufactured in Canada from raw materials exported from the United States, and in accordance with drawings and specifications furnished by Union Tank Car Company of Chicago, Illinois, a manufacturer of railway tank cars. The most prominent structural member of the imported article consists of a cylindrical 33,500 gallon L.P.G. (Liquid Petroleum Gas) tank fabricated from carbon steel. According to the testimony of Alvin A. Bowcutt, Union's operations manager, a number of sub-assemblies and at least one assembly are welded to the tank at the time of its manufacture in Canada and prior to "stress relieving" which, in the case at bar, took place in Canada. Such parts consist of brackets for catwalk supports, safety railing, running boards, and dome platform, and brackets and support for hand brakes, clips for air brake lines and tank, and the assembly for couplers.

Also shown on the drawings of the unfinished article (exhibit 1) in enlarged detail are the support for the trainline—shown in association with the brake pipe support and pipe anchor—and truck bolsters and bolster saddles affixed at both ends of the tank. And one of the truck bolsters is also visible in the photograph of the unfinished article depicted in exhibit 2.

It was also brought out in the evidence that the involved articles are brought into this country over railroad lines on truck wheels which, although never permanently attached to the tanks, are generally the same truck wheels with which the article is equipped when manufacture is complete. There are times, however when the truck wheels by means of which the imported article moves over railroad lines into

this country are "borrowed", as it were, for transportation purposes only.

And it is established in the evidence that after importation, equipment installed on the articles in question consists of the safety devices, the trainline, the brake lines, the ladders, the top platforms, all the valve control assembly on the top, the top hatch cover over the gauge equipment, the brakes, including the A.B. brake unit, etc., and the air reservoir.

The competing tariff provisions read:

> Metal pressure containers designed and used for the transport and storage of compressed gases:
>
> \*      \*      \*      \*      \*      \*      \*
>
> 640.10      Other _____ 10% ad val.
>
> \*      \*      \*      \*      \*      \*      \*
>
> Railroad and railway rolling stock:
> 690.15      Passenger, baggage, mail, freight and other cars, not self-propelled__ 18% ad val.

Plaintiff argues that the imported articles are not railroad cars or railway rolling stock, are not part of any commercial article, and that they respond to the *eo nomine* provision for metal pressure containers. And the defendant contends that the imported articles were properly classified as unfinished railway cars.

In connection with the truck bolsters and their relationship to the tank ends, the court notices that there are variations in configurations between these parts as shown in the drawings (exhibits 1 and 3) and in the photographs (exhibits 2 and 4). The drawings call for "tapered tank end sections" with corresponding angular lines on the upper or mating surface of the bolsters, while the photographs indicate that the actual articles have cylindrical end sections with corresponding horizontal lines on the upper or mating surface of the bolsters. This would suggest that there had been some sort of departure from the drawings in the construction of the imported articles. We mention this only because the testimony of one of the witnesses is indicative that the articles in question are representations of the schematic drawings before us. In any case, we think that there is enough shown in the drawings and other exhibits to enable us to form a conclusion respecting classification of the imported articles, notwithstanding any such modifications.

The tank *per se* responds to the language of item 640.10 in view of the testimony and exhibits. The finished tank car responds to the language of item 690.15. The question is whether the "tank" became an "unfinished tank car" as of the time of importation so as to be removed from classification under item 640.10 and brought within the

ambit of item 690.15. And we think the question turns on the degree of manufacture to which the involved article had been subjected at that time.

We are not persuaded that the welding to the tanks prior to importation of sub-assemblies for catwalks, safety railing, running boards, and dome platform is critical to the classification of the article. We think it entirely feasible that such upper structural members or some combination of them would ordinarily be included in a L.P.G. tank constructed for use as a stationary storage container, or in one constructed to provide a means of transportation of liquids under pressure of a mode other than by rail.

We do, however, think that the welding to the tank prior to importation of the lower sub-assemblies for hand brakes, air brake lines and tank (trainline), and the assembly for couplers, and particularly, the affixation of the truck bolster assembly, have significance in determining the character of the article even in an unfinished state. These particular structural members are all integral parts of a railroad tank car, and the incorporation of such parts in a cylindrical tank can hardly be said to advance the tank to any stage of completion as a container. If anything, the addition of such parts makes the tank something more than a container, for such parts would be superfluous as appendages to a "container." And with the addition of the truck bolster assembly to the tank in the initial stage of manufacture, it would make no difference whether the imported article thus adorned is brought into this country on its own truck wheels, or whether it comes in on "borrowed" truck wheels. In either case movement of the article over the rails is made possible only by the presence of the structural mating part (bolster) necessary to accommodate the truck wheels.

We are, therefore, of the opinion that the evidence at bar clearly establishes the imported merchandise to be unfinished railroad or railway rolling stock of a kind within the language of item 690.15. And in view of the provisions of Rule 10 (h) of the General Interpretative Rules to the tariff schedules which provides that "a tariff description of an article covers such article . . . whether finished or not finished," the article could not properly be excluded from classification under item 690.15 merely because it is in an unfinished state. It, therefore, follows that the merchandise at bar was correctly classified, and that the protests herein must be overruled.

Judgment will be entered accordingly.